## FIRST NATIONAL BANK OF SPRINGFIELD, Respondent, v. PETER HAULENBEEK, Appellant.

*Bills and notes — exclusion of evidence of a diversion thereof — measure of damages — effect of taking usury by a national bank — United States Revised Statutes, secs. 5197, 5198.*

A national bank, organized and transacting its business in the State of Masachusetts, brought an action in the State of New York upon four promissory notes made by Peter Haulenbeek, one to the order of the maker and three to the order of a company, of which one Morris was treasurer. The defendant set up as a defense the diversion of the paper from the purposes for which it was made, and usury, alleging that he delivered one of the notes to Morris upon his promise to deliver coffee therefor before the note was used, and that he delivered the other three to Morris without consideration, to raise money upon them, but that Morris delivered all the notes to Hotchkiss, a note broker, upon a usurious agreement under which Hotchkiss, from whom the bank bought the notes, was to receive more than legal interest. Upon the trial evidence of these defenses was excluded. *Held,* error.

That if there were a diversion, the plaintiff, though a *bona fide* holder, could only recover what it had paid for the notes.

That if the original discount of the notes upon the sale to plaintiff, a national bank, were usurious, it thereby forfeited all the interest upon the notes.

Appeal by the defendant Peter Haulenbeek from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 10th day of June, 1891, upon a verdict for the plaintiff for $5,226.47 and costs, after a trial at the New York Circuit before the court and a jury.

*Nelson Smith,* for the appellant.

*Charles A. Wendell,* for the respondent.

Patterson, J. :

The complaint in this action is upon four promissory notes made by the defendant, one dated September 2, 1886, for $995.50, payable to the order of the maker four months after date; another dated September 27, 1886, for $1,050.05, payable to the order of the New York Textile Filter Company, payable four months after date at the North River Bank; the third dated September 30, 1886, for $1,050.40 to the order of the New York Textile Filter Company, payable four months after date at the North River Bank;

the fourth for $1,050, dated October 29, 1886, payable four months after date to the order of the New York Textile Filter Company, payable at the North River Bank.

The answer sets up several distinct defenses. It is necessary to consider only the second and third.

The second defense relates to the note dated September 30, 1886, and it is averred that it was made without consideration; was obtained from the defendant by one Morris, who, when he received it, promised to deliver to the defendant coffee therefor, at the market-price before the note was put in use; that Morris diverted the same from its purpose, and wrongfully delivered it to one Hotchkiss, under and pursuant to a corrupt and usurious agreement by which Hotchkiss was to be paid a greater rate of interest than six per cent per annum.

The third defense relates to the three other promissory notes, and as to them it is alleged that they were given without consideration to Morris, and for the purpose of borrowing money on them, and that instead of so doing Morris negotiated and delivered the notes to Hotchkiss under a corrupt and usurious agreement, by which Hotchkiss reserved more than six per cent per annum on the amount of the notes respectively, contrary to the statutes of this State and of the State of Massachusetts (the plaintiff is an incorporated national bank, located in Massachusetts), and of the statutes of the United States, by which the plaintiff, as a national bank, was prohibited from taking interest in excess of that which was allowable by the law of the States of New York, Massachusetts and of the United States.

On the trial, the cashier of the plaintiff was examined. The notes were shown to him, and he testified that he bought them before maturity of Hotchkiss, who was a note broker in the city of New York. Hotchkiss testified that he personally took the notes to Springfield, Massachusetts, and there sold them to the plaintiff. The precise amount paid for each of the notes was not proven, but Morris, to whom they were delivered by the defendant and who gave them for sale to the broker, testified that the discount upon the notes was either ten or twelve per cent, and not less, as to either of them, than ten per cent. At the close of the plaintiff's case the defendant was called as a witness, on his own behalf, to prove that

the paper and all of it was diverted paper, and he was asked to state as to the note dated September 2d, 1886, whether it had any consideration and the circumstances under which it was delivered. That was objected to and the objection was sustained, the court stating that it would allow the defendant to show that the notes were given to Morris for the purpose of having them discounted, and that they were accommodation notes, but that was not the exact aspect in which the defendant intended to present the case, for it was distinctly claimed that as to the notes of September second, September twenty-seventh and September thirtieth, that they were made without any consideration, were delivered to Morris to be discounted, and that the defendant Haulenbeek never received anything for them. With reference to the note of the thirtieth of September, the offer made was to prove that that note was parted with on the promise of Morris that coffee would be furnished for it, and that the consideration had wholly failed. The learned judge excluded all the testimony thus offered, and to that an exception was taken. Thereupon the learned judge directed a verdict for the plaintiff for the amount of all the notes, including interest from the dates at which they respectively matured. As the case was tried, we consider these offers broad enough to cover what is contained in the second and third defenses, as they are set forth in the answer, and we are of opinion that the learned judge was in error in not allowing the testimony to be given. If proof could be made as to the three notes, that they were given to Morris in order that money might be raised upon them for Haulenbeek, and instead of their being applied to that purpose they were discounted by Morris, either for himself or for the company of which he was treasurer, then there certainly was a misuse amounting to a diversion of the notes; and, under such circumstances, all that a *bona fide* holder could recover would be the amount actually advanced on the notes, and there is nothing to show the exact amount the plaintiff paid. As to the third note, the diversion, if the facts appeared in evidence as they are claimed by the defendant to exist, the same rule of recovery would apply. But there is another aspect in which this testimony was material, at least to reduce the amount of the obligation of the defendant on each of the notes. If the defendant's claim were established that all these notes were originally discounted at usuri-

ous rates of interest of from ten to twelve per cent, then the plaintiff, being a national bank, would not be entitled to recover any interest whatever on those notes under the statutes of the United States. Sections 5197 (U. S. Rev. Stat.), provides that an association organized under the national banking law may only take and reserve "interest at the rate allowed by the laws of the State, territory or district where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title." And the consequences of taking usurious interest are declared by section 5198, namely, that there shall be a forfeiture " of the entire interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon."

We think the testimony that was offered to be given by Mr. Haulenbeek was clearly admissible, at least upon the question of the amount actually paid for these notes by the plaintiff, and also upon the question as to whether or not any interest should be charged against the defendant upon them. These items of interest amount to a considerable sum — nearly a thousand dollars ; and for the error in rejecting the testimony referred to, we think that this judgment must be reversed, with costs to appellant to abide the event.

Van Brunt, P. J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.